

1  BILAL A. ESSAYLI
   First Assistant United States Attorney
2  IAN V. YANNIELLO
   Assistant United States Attorney
3  Chief, National Security Division
   JOHN J. LULEJIAN (Cal. Bar No. 186783)
4  Assistant United States Attorney
      1200 United States Courthouse
5     312 North Spring Street
      Los Angeles, California 90012
6     Telephone: (213) 894-0721
      Facsimile: (213) 894-0141
7     E-mail:   John.Lulejian@usdoj.gov

8  Attorneys for Plaintiff
   UNITED STATES OF AMERICA
9

10                   UNITED STATES DISTRICT COURT

11              FOR THE CENTRAL DISTRICT OF CALIFORNIA

12  IN THE MATTER OF THE            No. 2:25-MJ-06848
    EXTRADITION OF
13                                  GOVERNMENT'S REQUEST FOR DETENTION
    ANDREW GARRONI,                 PENDING EXTRADITION PROCEEDINGS;
14                                  [Proposed] ORDER
    A Fugitive from the
15  Government of the
    Federal Republic of Germany.
16

17

18

19

20

21

22

23

24

25

26

27

28

1      Plaintiff, United States of America, by and through its counsel

2 of record, the United States Attorney, hereby submits its request for

3 detention pending further extradition proceedings, and a memorandum

4 of points and authorities in support of that request.

5

6 Dated: November 5, 2025     Respectfully submitted,

7                        BILAL A. ESSAYLI
                       First Assistant United States Attorney

8

9                        IAN V. YANNIELLO
                       Assistant United States Attorney
                       Chief, National Security Division

10

11

12                        */s/ John J. Lulejian*
                       JOHN J. LULEJIAN
                       Assistant United States Attorney

13

14                        Attorneys for Plaintiff
                       UNITED STATES OF AMERICA

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**TABLE OF CONTENTS**

2

DESCRIPTION                                                                    PAGE

3

4   TABLE OF AUTHORITIES .................... **Error! Bookmark not defined.**

5   MEMORANDUM OF POINTS AND AUTHORITIES ................................ 1

6   I.    INTRODUCTION .................................................... 1

7   II.   PROCEDURAL BACKGROUND ........................................... 2

8   III. ARGUMENT ........................................................ 3

9         A.    Applicable Law ........................................... 4

10              1.   A Strong Presumption Against Bail Governs in an
                     International Extradition Proceeding ................ 4
11
                2.   Fugitives Must Be Detained Unless They Establish
12                   "Special Circumstances" and also Demonstrate that
                     They Are Neither a Flight Risk nor a Danger to
13                   the Community ....................................... 6

14        B.    Analysis ................................................. 9

15              1.   GARRONI Cannot Meet His Burden and Prove that He
                     Is Not a Significant Flight Risk ................... 9
16
                2.   GARRONI Cannot Meet His Burden and Establish
17                   "Special Circumstances" that Justify Bail ......... 11

18  IV.   CONCLUSION ..................................................... 12

19  CERTIFICATE OF COMPLIANCE .......................................... 13

20

21

22

23

24

25

26

27

28

i

**TABLE OF AUTHORITIES**

DESCRIPTION                                                                PAGE

CASES

In re Extradition of Adame,

    No. Misc. No. H-13-287, 2013 WL 1222115

    (S.D. Tex. Mar. 25, 2013) ................................... 10

In re Extradition of Antonowicz,

    244 F. Supp. 3d 1066 (C.D. Cal. 2017) .................. 6, 8, 9

In re Extradition of Beresford-Redman,

    753 F. Supp. 2d 1078 (C.D. Cal. 2010) ..................... 6, 7

In re Extradition of Garcia,

    615 F. Supp. 2d 162 (S.D.N.Y. 2009) .......................... 5

In re Extradition of Garcia,

    761 F. Supp. 2d 468 (S.D. Tex. 2010) ....................... 10

In re Extradition of Hamilton-Byrne,

    831 F. Supp. 287 (S.D.N.Y. 1992) ............................ 8

In re Extradition of Heilbronn,

    773 F. Supp. 1576 (W.D. Mich. 1991) ......................... 8

In re Extradition of Kin-Hong,

    913 F. Supp. 50 (D. Mass. 1996) ............................. 6

In re Extradition of Knotek,

    No. 13-CV-9204-BRO-JCG, 2016 WL 4726537

    (C.D. Cal. Sept. 8, 2016) ................................... 8

In re Extradition of Kyung Joon Kim,

    No. 04-CV-3886, 2004 WL 5782517

    (C.D. Cal. July 1, 2004) ................................. 8, 9

In re Extradition of Mainero,

    950 F. Supp. 290 (S.D. Cal. 1996) ........................ 6, 7

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                          PAGE

In re Extradition of Martinelli Berrocal,

    263 F. Supp. 3d 1280 (S.D. Fla. 2017) .............. 5, 6, 8, 10

In re Extradition of Morrell,

    No. 3:24-MJ-05020-TLF, 2024 WL 756017

    (W.D. Wash. Feb. 23, 2024) .................................. 10

In re Extradition of Nacif-Borge,

    829 F. Supp. 1210 (D. Nev. 1993) ............................ 9

In re Extradition of Noeller,

    No. 17 CR 664, 2017 WL 6462358

    (N.D. Ill. Dec. 19, 2017) ................................. 7, 8

In re Extradition of Orozco,

    268 F. Supp. 2d 1115 (D. Ariz. 2003) ........................ 8

In re Extradition of Patel,

    08-430-MJ-HUBEL, 2008 WL 941628

    (D. Or. Apr. 4, 2008) ....................................... 6

In re Extradition of Pelletier,

    No. 09-mc-22416, 2009 WL 3837660

    (S.D. Fla. Nov. 16, 2009) ................................... 8

In re Extradition of Perez-Cueva,

    No. 16-MJ-0233, 2016 WL 884877

    (C.D. Cal. Mar. 7, 2016) ................................. 3, 6

In re Extradition of Rovelli,

    977 F. Supp. 566 (D. Conn. 1997) ............................ 8

In re Extradition of Shaw,

    No. 14-MC-81475-WM, 2015 WL 521183

    (S.D. Fla. Feb. 6, 2015) ................................... 10

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                              PAGE

In re Extradition of Sidali,

    868 F. Supp. 656 (D.N.J. 1994) ............................... 7

In re Extradition of Siegmund,

    887 F. Supp. 1383 (D. Nev. 1995) .......................... 7, 9

In re Extradition of Smyth,

    976 F.2d 1535 (9th Cir. 1992) ................................ 7

In re Mitchell,

    171 F. 289 (S.D.N.Y. 1909) ................................... 3

Jhirad v. Ferrandina,

    536 F.2d 478 (2d Cir. 1976) ................................. 10

Jimenez v. Aristiguieta,

    314 F.2d 649 (5th Cir. 1963) ................................. 4

Kamrin v. United States,

    725 F.2d 1225 (9th Cir. 1984) ................................ 3

Salerno v. United States,

    878 F.2d 317 (9th Cir. 1989) ....................... 4, 6, 7, 9

United States ex rel. McNamara v. Henkel,

    46 F.2d 84 (S.D.N.Y. 1912) ................................... 5

United States v. Botero,

    604 F. Supp. 1028 (S.D. Fla. 1985) .......................... 10

United States v. Kin-Hong,

    83 F.3d 523 (1st Cir. 1996) .................................. 7

United States v. Latulippe,

    No. 08-mj-59, 2008 WL 2704230

    (D.N.H. July 3, 2008) ........................................ 8

**TABLE OF AUTHORITIES (CONTINUED)**

DESCRIPTION                                                          PAGE

United States v. Leitner,

    784 F.2d 159 (2d Cir. 1986) ............................ 3, 7, 8

United States v. Snyder,

    No. 13-7082-mj, 2013 WL 1364275

    (D. Ariz. Apr. 3, 2013) ..................................... 4

Wright v. Henkel,

    190 U.S. 40 (1903) ....................................... 4, 5

STATUTES

18 U.S.C. §§ 3141 et seq. ......................................... 3

18 U.S.C. §§ 3141(a) .............................................. 3

18 U.S.C. §§ 3142 ................................................. 3

18 U.S.C. §§ 3156 ................................................. 3

18 U.S.C. §§ 3156(a) .............................................. 3

18 U.S.C. §§ 3181 et seq. ......................................... 3

FOREIGN STATUES

German Criminal Code, Section 129 para. 1 ........................ 1

German Criminal Code, Section 129 para. 5 ........................ 1

German Criminal Code, Section 129 para. 1 ........................ 1

1

**TABLE OF AUTHORITIES (CONTINUED)**

2    DESCRIPTION                                                      PAGE

3    TREATIES

4    Treaty Between the United States of America and the Federal

5        Republic of Germany Concerning Extradition, U.S.-F.R.G.,

6        June 20,1978, T.I.A.S. No. 9785, as amended by the

7        Supplementary Extradition Treaty with the Federal Republic

8        of Germany, U.S.-F.R.G., Oct. 21, 1986, S. Treaty Doc. No.

9        100-6 (1987), as amended by the Second Supplementary Treaty

10       to the Treaty Between the United States of America and the

11       Federal Republic of Germany Concerning Extradition, U.S.-

12       F.R.G., Apr. 18, 2006, S. Treaty Doc. No. 109-14 (2006) ...... 2

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**MEMORANDUM OF POINTS AND AUTHORITIES**

2    **I.    INTRODUCTION**

3        This is an extradition matter.  The Government of the Federal

4    Republic of Germany ("Germany") has submitted to the United States a

5    request for the provisional arrest with a view toward extradition of

6    the fugitive, ANDREW GARRONI ("GARRONI"), so that he may be

7    prosecuted in Germany for Formation of a Criminal Organization

8    Abroad, in violation of Section 129 paras. 1, 5 and 129b para. 1 of

9    the German Criminal Code.[1] (See Docket No. 1 at ¶ 2.)

10       Germany is prosecuting a global criminal organization, which

11   through separate but related networks, falsified subscriptions to

12   online "services" that were not provided, fraudulently charged debit

13   and credit cards for those nonexistent services through German

14   payment service providers, and distributed the wrongly charged money

15   to the participants in the global criminal organization.  (See id. at

16   ¶ 6(i).)  The networks, including the FSX network in which GARRONI is

17   accused of participating, created shell companies that purportedly

18   operated fictitious Internet dating websites and fraudulently

19   registered those companies with German payment service providers to

20   facilitate financial transactions between unsuspecting victims and

21   the criminal organization.  (See id.)  Germany's case is based in

22   part on evidence developed during the successful 2020 prosecutions of

23   the late Hamid "Ray" Akhavan ("R. Akhavan") and Ruben Weigand

24   ("Weigand"), a current co-defendant, for similar criminal conduct in

25

26

27   [1] When the United States sought a warrant for A. AKHAVAN's
     provisional arrest, it did so based only on this charge, and without
     prejudice to proceeding on additional charges when Germany's formal
28   request for extradition is reviewed by the Department of State and is
     presented to the Court.

1  the United States District Court for the Southern District of New
2  York, 1:20-cr-00188-JBR (S.D.N.Y. 2020).[2]  (See id. at ¶ 6.)

3       German authorities believe that GARRONI is one of FSX's
4  directors, serving as FSX's Chief Executive Officer, and is an
5  essential decision-maker of the FSX network.  (See id. at ¶ 7(a).)
6  The German investigation revealed that GARRONI determined which
7  payment providers to use, which documents to use to meet know-your-
8  customer requirements to onboard with the payment services providers,
9  and which fictitious merchant and website accounts to show to the
10  payment services providers.  (See id.)  GARRONI was also responsible
11  for maintaining continuous relationships with German payment
12  providers used by the FSX network.  (See id. at ¶ 7(b).)
13  Additionally, he addressed potentially fraudulent credit card
14  transactions flagged by the payment service providers, participated
15  in discussions regarding third-party inquiries of suspected fraud,
16  and helped coordinate the steps necessary to protect the network from
17  detection.  (See id. at ¶ 7(c).)

18  **II.  PROCEDURAL BACKGROUND**

19       On November 3, 2025, in accordance with its treaty obligations,[3]
20  the United States filed a Complaint for Provisional Arrest with a

21

22  [2] See https://www.justice.gov/usao-sdny/pr/two-architects-
    fraudulent-scheme-sentenced-processing-over-150-million-through-us
23  (R. Akhavan and Weigand sentenced following conviction of "scheme to
    deceive U.S. issuing banks and credit unions into effectuating more
24  than $150 million of credit and debit card purchases of marijuana by
    disguising those transactions as purchases of other kinds of goods,
25  such as face creams and dog products.")

26  [3] Treaty Between the United States of America and the Federal
    Republic of Germany Concerning Extradition, U.S.-F.R.G., June
    20,1978, T.I.A.S. No. 9785, as amended by the Supplementary
27  Extradition Treaty with the Federal Republic of Germany, U.S.-F.R.G.,
    Oct. 21, 1986, S. Treaty Doc. No. 100-6 (1987), as amended by the
28  Second Supplementary Treaty to the Treaty Between the United States
                              *(footnote cont'd on next page)*

1   View Toward Extradition (18 U.S.C. § 3184) in this Court.   (Docket
2   No. 1.)   That same day, the Honorable Jacqueline Chooljian,
3   United States Magistrate Judge for the Central District of
4   California, issued a warrant for GARRONI's arrest.   On November 4,
5   2025, the United States Marshals Service arrested GARRONI in Los
6   Angeles, California.

7   **III. ARGUMENT**

8        Like the extradition process as a whole, the determination of
9   whether to release a fugitive on bail is sui generis.   The federal
10  statutes governing extradition in the United States, 18 U.S.C.
11  §§ 3181 et seq., do not provide for bail.   Further, the Bail Reform
12  Act, 18 U.S.C. §§ 3141 et seq., does not apply because an extradition
13  proceeding is not a criminal case.[4]   See Kamrin v. United States, 725
14  F.2d 1225, 1228 (9th Cir. 1984); In re Extradition of Perez-Cueva,
15  No. 16-MJ-0233, 2016 WL 884877, at *1 (C.D. Cal. Mar. 7, 2016).
16  Rather, case law provides that bail should be granted in an
17  extradition proceeding "only in the most pressing circumstances, and
18  when the requirements of justice are absolutely peremptory."   United
19  States v. Leitner, 784 F.2d 159, 160 (2d Cir. 1986) (quoting In re
20  Mitchell, 171 F. 289, 289 (S.D.N.Y. 1909) (Hand, J.)).

21
22
23
24  of America and the Federal Republic of Germany Concerning
25  Extradition, U.S.-F.R.G., Apr. 18, 2006, S. Treaty Doc. No. 109-14
    (2006) (collectively "the Treaty").

26       [4]   The Bail Reform Act applies only to "offenses" in violation
    of United States law that are triable in the courts of the
27  United States.   See 18 U.S.C. §§ 3141(a), 3142, 3156(a)(2).   Here,
    GARRONI is not charged with an "offense" within the meaning of
28  18 U.S.C. § 3156, but rather, with an offense committed in violation
    of the law of the requesting state, Germany.

                                  3

1

**A.   Applicable Law**

2

    1.   A Strong Presumption Against Bail Governs in an

3

        International Extradition Proceeding

4        Unlike in domestic criminal cases, "[t]here is a presumption

5  against bail in an extradition case."  Salerno v. United States, 878

6  F.2d 317, 317 (9th Cir. 1989); see also United States v. Snyder, No.

7  13-7082-mj, 2013 WL 1364275, at *2 (D. Ariz. Apr. 3, 2013) (noting

8  that presumption against bail in extradition is "well-established").

9  The Supreme Court established this presumption against bail in Wright

10  v. Henkel, explaining that when a foreign government makes a proper

11  request pursuant to a valid extradition treaty, the United States is

12  obligated to deliver the person sought after he or she is

13  apprehended:

14      The demanding government, when it has done all that the

15      treaty and the law require it to do, is entitled to the

16      delivery of the accused on the issue of the proper warrant,

17      and the other government is under obligation to make the

18      surrender; an obligation which it might be impossible to

19      fulfill if release on bail were permitted.  The enforcement

20      of the bond, if forfeited, would hardly meet the

21      international demand; and the regaining of the custody of

22      the accused obviously would be surrounded with serious

23      embarrassment.

24  190 U.S. 40, 62 (1903); accord Jimenez v. Aristiguieta, 314 F.2d

25  649, 653 (5th Cir. 1963) ("No amount of money could answer the

26  damage that would be sustained by the United States were the

27  appellant to be released on bond, flee the jurisdiction, and be

28  unavailable for surrender, if so determined.  The obligation of

1  this country under its [extradition] treaty with Venezuela is of
2  paramount importance."); United States ex rel. McNamara v.
3  Henkel, 46 F.2d 84, 84-85 (S.D.N.Y. 1912) (presentation of
4  forfeited bail to foreign nation "is ridiculous, if not
5  insulting").

6       The prudential reasons for this presumption against bail in
7  international extradition cases are clear and compelling.  When, as
8  here, a requesting country meets the conditions of the applicable
9  extradition treaty, the United States has an "overriding interest in
10 complying with its treaty obligations" to deliver the fugitive.  In
11 re Extradition of Garcia, 615 F. Supp. 2d 162, 166 (S.D.N.Y. 2009);
12 see also Wright, 190 U.S. at 62.  It is imperative that the United
13 States be regarded in the international community as a country that
14 honors its agreements in order to be in a position to demand that
15 other nations meet their reciprocal obligations to the United States.
16 Such reciprocity would be defeated if a fugitive flees after being
17 released on bond.  See In re Extradition of Martinelli Berrocal, 263
18 F. Supp. 3d 1280, 1306 (S.D. Fla. 2017) ("[O]ur Executive Branch has
19 a vested interest in enforcing our own treaty obligations for fear
20 that other treaty partners will refrain from doing so in the future.
21 And a difficult but necessary measure in carrying out that
22 responsibility is to secure a wanted individual and surrender him or
23 her to the foreign jurisdiction.").

24
25
26
27
28

1            2.    Fugitives Must Be Detained Unless They Establish

2                "Special Circumstances" and also Demonstrate that They

3                Are Neither a Flight Risk nor a Danger to the

4                Community

5      In light of the strong presumption against bail established in

6 Wright and its progeny, international fugitives may not be released

7 on bail unless they demonstrate that (1) they are neither a flight

8 risk nor a danger to the community, and (2) "special circumstances"

9 warrant their release.  See, e.g., In re Extradition of Antonowicz,

10 244 F. Supp. 3d 1066, 1068 (C.D. Cal. 2017); In re Extradition of

11 Mainero, 950 F. Supp. 290, 294 (S.D. Cal. 1996). "This 'special

12 circumstances' standard is much stricter than the 'reasonable

13 assurance' of appearance standard made applicable to domestic

14 criminal proceedings by the Bail Reform Act." In re Extradition of

15 Kin-Hong, 913 F. Supp. 50, 53 (D. Mass. 1996). Further, the burden

16 of showing "special circumstances" rests upon the fugitive. See,

17 e.g., Salerno, 878 F.2d at 317-18.

18      In evaluating a fugitive's risk of flight in the extradition

19 context, courts have considered, among other things, the fugitive's

20 financial means, ties with foreign countries, and incentive to flee

21 based on the severity of the offense. See, e.g., Martinelli

22 Berrocal, 263 F. Supp. 3d at 1304; In re Extradition of Beresford-

23 Redman, 753 F. Supp. 2d 1078, 1091 (C.D. Cal. 2010) (finding that

24 "well-educated and sophisticated" fugitive facing serious charges in

25 foreign country had both "incentive and ability to flee" and

26 therefore presented flight risk); In re Extradition of Patel, 08-430-

27 MJ-HUBEL, 2008 WL 941628, at *2 (D. Or. Apr. 4, 2008) (considering

28

6

1  fact that fugitive, a physician, had "more than sufficient assets
2  available with which to flee").

3      Crucially, the "special circumstances" inquiry is separate from
4  considerations of danger to the community or risk of flight. See,
5  e.g., Perez-Cueva, 2016 WL 884877, at *2 (special circumstances must
6  exist in addition to absence of risk of flight). "Even a low risk of
7  flight" is not a circumstance sufficiently "unique" to constitute a
8  special circumstance. Leitner, 784 F.2d at 161; see also Salerno,
9  878 F.2d at 317-18 (lack of flight risk "is not a criteria for
10 release in an extradition case"). Conversely, a fugitive who poses a
11 danger to the community and/or a risk of flight should be denied
12 bail, even in the face of special circumstances. See In re
13 Extradition of Siegmund, 887 F. Supp. 1383, 1384 (D. Nev. 1995).

14     "Special circumstances must be extraordinary and not factors
15 applicable to all defendants facing extradition." Mainero, 950 F.
16 Supp. at 294 (citing In re Extradition of Smyth, 976 F.2d 1535, 1535-
17 36 (9th Cir. 1992)). Courts have considered and rejected a lengthy
18 list of would-be special circumstances, including but not limited to:

19     •   The complexity of the pending litigation, see, e.g., United
20         States v. Kin-Hong, 83 F.3d 523, 525 (1st Cir. 1996);

21     •   The fugitive's need to consult with an attorney and/or
22         participate in pending litigation, see, e.g., Smyth, 976
23         F.2d at 1535-36;

24     •   The fugitive's character, background, and/or ties to the
25         community, see, e.g., In re Extradition of Noeller, No. 17
26         CR 664, 2017 WL 6462358, at *5 (N.D. Ill. Dec. 19, 2017);
27         Beresford-Redman, 753 F. Supp. 2d at 1089; In re
28         Extradition of Sidali, 868 F. Supp. 656, 658 (D.N.J. 1994);

7

1        • That the fugitive may have been living openly, see, e.g.,
2            Leitner, 784 F.2d at 160-61; In re Extradition of
3            Pelletier, No. 09-mc-22416, 2009 WL 3837660, at *1, 3-4
4            (S.D. Fla. Nov. 16, 2009);

5        • Discomfort, special dietary needs, or medical concerns that
6            can be attended to while incarcerated, see, e.g., Noeller,
7            2017 WL 6462358, at *8-9; Martinelli Berrocal, 263 F. Supp.
8            3d at 1301-02; United States v. Latulippe, No. 08-mj-59,
9            2008 WL 2704230, at *1 (D.N.H. July 3, 2008); In re
10           Extradition of Kyung Joon Kim, No. 04-CV-3886, 2004 WL
11           5782517, at *5 (C.D. Cal. July 1, 2004); In re Extradition
12           of Hamilton-Byrne, 831 F. Supp. 287, 290-91 (S.D.N.Y.
13           1992);

14       • United States citizenship or the pendency of naturalization
15           or other immigration proceedings, see, e.g., Antonowicz,
16           244 F. Supp. 3d at 1072; In re Extradition of Knotek, No.
17           13-CV-9204-BRO-JCG, 2016 WL 4726537, at *7 (C.D. Cal.
18           Sept. 8, 2016); In re Extradition of Orozco, 268 F. Supp.
19           2d 1115, 1117 (D. Ariz. 2003);

20       • The fugitive's professional status, see, e.g., Pelletier,
21           2009 WL 3837660, at *3-4 (allegedly well-respected
22           businessman); In re Extradition of Heilbronn, 773 F. Supp.
23           1576, 1581-82 (W.D. Mich. 1991) (highly-trained doctor);

24       • The availability of electronic monitoring, see, e.g., In re
25           Extradition of Rovelli, 977 F. Supp. 566, 569 (D. Conn.
26           1997);

27

28

                                8

1
2
3

- Ordinary delay or delay occasioned by the fugitive in the course of extradition proceedings, see, e.g., Salerno, 878 F.2d at 318; Antonowicz, 244 F. Supp. 3d at 1070; and

4
5
6
7
8

- The availability of bail for the same offense in the requesting country, see, e.g., Antonowicz, 244 F. Supp. 3d at 1070; Kyung Joon Kim, 2004 WL 5782517, at *2; Siegmund, 887 F. Supp. at 1386-87; but see In re Extradition of Nacif-Borge, 829 F. Supp. 1210, 1216-17 (D. Nev. 1993).

9   While in certain exceptional cases some of the above may have
10  been deemed a "special circumstance," courts generally determine
11  "special circumstances" to exist based on a confluence of factors, as
12  opposed to any single consideration.  Such findings are highly case-
13  specific and within the discretion of the Court, mindful of the
14  strong presumption against bail and future reciprocity of other
15  countries at stake.

16  **B.   Analysis**

17  The United States respectfully requests that the Court detain
18  GARRONI without bond.  GARRONI cannot meet his burden and prove that
19  he is not a significant flight risk.  Further, even if GARRONI
20  somehow could overcome this hurdle, the United States is not aware of
21  any "special circumstances" that would justify bail in this case.

22          1.   GARRONI Cannot Meet His Burden and Prove that He Is
23               Not a Significant Flight Risk

24  There is a substantial risk that GARRONI would flee if he were
25  released from custody.  A fugitive charged with crimes in another
26  country is, by definition, in flight or deliberately absent from that
27  jurisdiction.  The fact that the fugitive has evaded and/or continues
28  to evade legal process in the requesting country is indicative of

9

1    GARRONI's risk of flight in the United States. Cf. United States v.
2    Botero, 604 F. Supp. 1028, 1035 (S.D. Fla. 1985) ("In the context of
3    determining whether a defendant poses a substantial risk of flight,
4    this Court does not find any meaningful distinction between a person
5    who left the country when he learned of pending charges and one who
6    already outside the country refuses to return to face these charges.
7    The intent is the same-the avoidance of prosecution.") (citing Jhirad
8    v. Ferrandina, 536 F.2d 478, 483 (2d Cir. 1976)).

9        Given the strength of Germany's case and the United States'
10   relatively low burden of proof in extradition hearings, GARRONI has
11   strong incentive to flee, whether to a third country or to an
12   underground location within the United States. See, e.g., In re
13   Extradition of Garcia, 761 F. Supp. 2d 468, 483 (S.D. Tex. 2010)
14   ("The Court believes that [fugitive]'s risk of flight is beyond a
15   'tolerable risk.' He has virtually no incentive to appear at his
16   extradition hearing, where, due to the Government's low burden of
17   proof, there are significant risks that he will be formally
18   extradited to Mexico."); In re Extradition of Adame, No. Misc. No. H-
19   13-287, 2013 WL 1222115, at *3 (S.D. Tex. Mar. 25, 2013) (the
20   fugitive "has virtually no incentive to appear at his extradition
21   hearing, where, due to the Government's low burden of proof, there is
22   a significant risk that he will be formally extradited to Mexico").

23       Moreover, the prospect of serving a lengthy prison sentence in
24   Germany after age seventy incentivizes GARRONI's flight. See, e.g.,
25   In re Extradition of Morrell, No. 3:24-MJ-05020-TLF, 2024 WL 756017,
26   at *3 (W.D. Wash. Feb. 23, 2024) (prospect of significant jail time
27   upon extradition supports a significant incentive to flee);
28   Martinelli Berrocal, 263 F. Supp. 3d at 1305 (sixty-six years of age

                                  10

1 | and potential twenty-one-year sentence "materially contribute[d] to
2 | [the fugitive's] high risk of flight"); In re Extradition of Shaw,
3 | No. 14-MC-81475-WM, 2015 WL 521183, at *9 (S.D. Fla. Feb. 6, 2015)
4 | (noting that "the [fugitive] is facing serious criminal sanctions in
5 | Thailand, which fact provides him with a strong incentive to flee").
6 | Here, GARRONI faces a maximum term of imprisonment of 10 years if
7 | convicted of the offense for which is he sought by Germany.
8 | Moreover, given the scope of the economic harm caused by the FSX
9 | network that GARRONI helped lead-estimated to be approximately € 73
10 | million-he likely has the financial resources to flee.  Thus, GARRONI
11 | has every incentive and the ability to flee this district and/or the
12 | United States if he is not detained, and no amount of bail would
13 | guarantee his presence during his extradition proceeding.

14 | 2. GARRONI Cannot Meet His Burden and Establish
15 | "Special Circumstances" that Justify Bail

16 | GARRONI's severe risk of flight is sufficient alone for the
17 | Court to deny any forthcoming application for bail.  However, even if
18 | the Court were satisfied that he is neither a flight risk nor a
19 | danger to the community, the United States is unaware of any "special
20 | circumstances" that would justify bail in this case.

21 | Notwithstanding the foregoing, should the Court be inclined to
22 | grant bail in this case, the United States respectfully requests that
23 | the Court submit special written findings as to those specific
24 | matters that are found to constitute "special circumstances."
25 | Moreover, to protect the ability of the United States to meet its
26 | treaty obligations to the Government of Germany, the United States
27 | also respectfully requests that the Court notify the parties within a

28

11

1  reasonable amount of time in advance of any contemplated release
2  order.

3  **IV.    CONCLUSION**

4        For the foregoing reasons, the United States respectfully
5  requests that the Court detain GARRONI pending resolution of this
6  extradition proceeding.